UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In re: )
)
PROJECT HOMESTEAD, INC., ) Case No. 04-10239C-7G
)
      Debtor, )
_____ )
)
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY and )
COUNTRYWIDE HOME LOANS, INC., )
)
      Plaintiffs, )
)
v. ) Adversary No. 05-2112
)
WILLIAM P. MILLER AS TRUSTEE for )
PROJECT HOMESTEAD, INC., and )
KATIE L. HAIRSTON, )
)
      Defendants. )
_____ )
)
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, SOUTHSTAR )
MORTGAGE FUNDING, LLC AND JP )
MORGAN CHASE BANK AS )
SUCCESSOR IN INTEREST TO )
BANKONE, NA, AS TRUSTEE OF ACE )
SECURITIES CORP. HOME EQUITY )
LOAN TRUST, SERIES 2003-HS1 (as )
successor in interest to FLICK )
MORTGAGE FUNDING, LLC), )
)
      Plaintiffs, )
)
v. ) Adversary No. 05-2113
)
WILLIAM P. MILLER AS TRUSTEE )
FOR DEBTOR, RAYMOND SMITH and )
NORMA SMITH, )
)
      Defendants. )
_____ )

129

```
COMMONWEALTH LAND TITLE          )
INSURANCE COMPANY and JP         )
MORGAN CHASE BANK, AS            )
TRUSTEE, (as successor in interest )
to Flick Mortgage Company, LLC),  )
                                  )
          Plaintiffs,             )
                                  )
v.                                )    Adversary No. 05-2114
                                  )
WILLIAM P. MILLER AS TRUSTEE     )
FOR DEBTOR, and VAN J. REEVES,    )
                                  )
          Defendants.             )
--------------------------------- )
                                  )
COMMONWEALTH LAND TITLE          )
INSURANCE COMPANY, SOUTHSTAR      )
MORTGAGE FUNDING, LLC, AND JP     )
MORGAN CHASE BANK, NA FKA JP      )
MORGAN CHASE BANK AS TRUSTEE     )
FOR STRUCTURED ASSET             )
MORTGAGE INVESTMENTS INC.         )
MORTGAGE PASS-THROUGH             )
CERTIFICATES SERIES 2003-AR2 (as  )
successor in interest to FLICK    )
MORTGAGE FUNDING, LLC),           )
                                  )
          Plaintiffs,             )
                                  )
v.                                )    Adversary No. 05-2115
                                  )
WILLIAM P. MILLER AS TRUSTEE     )
FOR DEBTOR, BERNICE KODUAH and    )
ERNEST K. BOATENG,                )
                                  )
          Defendants.             )
--------------------------------- )
```

```
COMMONWEALTH LAND TITLE          )
INSURANCE COMPANY, SOUTHSTAR     )
MORTGAGE FUNDING, LLC and        )
OPTEUM FINANCIAL SERVICES, LLC   )
(as successor in interest to FLICK )
MORTGAGE FUNDING, LLC), GB       )
HOME EQUITY, LLC,                )
                                 )
          Plaintiffs,            )
                                 )
v.                               )    Adversary No. 05-2116
                                 )
WILLIAM P. MILLER AS TRUSTEE     )
FOR DEBTOR, and JANICE DANIELS,  )
                                 )
          Defendants.            )
_____  )
                                 )
COMMONWEALTH LAND TITLE          )
INSURANCE COMPANY AND            )
REGIONS BANK, DBA REGIONS        )
MORTGAGE (AS SUCCESSOR IN        )
INTEREST TO UNION PLANTERS       )
BANK, NA),                       )
                                 )
          Plaintiffs,            )
                                 )
v.                               )    Adversary No. 05-2117
                                 )
WILLIAM P. MILLER AS TRUSTEE     )
FOR DEBTOR, SARAH E. COLEY AND   )
CLEVELAND L. BELL,               )
                                 )
          Defendants.            )
                                 )
```

## MEMORANDUM OPINION

These adversary proceedings came before the court on April 24,
2007 for hearing on cross motions for summary judgment filed in
each adversary proceeding by the plaintiffs and by defendant
William P. Miller.  John H. Small and Katherine J. Clayton appeared

on behalf of the plaintiffs and Christopher C. Finan appeared on behalf of defendant Miller.

## BACKGROUND

Prior to ceasing operations during the latter part of 2003, the Debtor, a North Carolina non-profit corporation, was engaged in the business of developing and selling affordable housing to low and moderate income purchasers in North Carolina. Each of these six adversary proceedings involves a residence that the Debtor purportedly sold to a purchaser in 2003 (the "Properties"). The plaintiffs in these proceedings are Commonwealth Land Title Insurance Company ("Commonwealth") and various lenders who hold promissory notes and deeds of trust from the individuals who purchased the residences from the Debtor (the "Lenders"). Commonwealth issued Closing Protection Letters when the residences were purchased. The defendants in these proceedings are William P. Miller, the Chapter 7 trustee for the Debtor (the "Trustee"), and the individuals who purchased the residences (the "Purchasers").

Although each of these proceedings arises out of a separate transaction, the fact patterns involved in the transactions are very similar. In each case, the Purchasers entered into purchase contracts with the Debtor and obtained loans in order to finance the purchase of their homes. Closings, or what the parties understood to be closings, were scheduled in early 2003 and held in each case in order to consummate the purchases. The closing

- 2 -

attorney for each of the closings was an attorney named Armina Swittenberg. Prior to the closings, the Lenders who had extended loans to the Purchasers wired the loan proceeds to Ms. Swittenberg's trust account. At each closing, one or more representatives of the Debtor and the respective Purchasers were present. At each closing, the Debtor received the purchase price of the property, including the portion that was paid from the loan proceeds that had been wired to Ms. Swittenberg, and a duly executed deed from the Debtor was delivered to the Purchasers that purportedly conveyed the property to the Purchasers. At each closing, the Purchasers executed a promissory note in favor of the Lender, along with a deed of trust purportedly granting the Lender a lien on the property being purchased to secure the promissory note. The deed from the Debtor and the deed of trust from the Purchasers were left with Ms. Swittenberg so that she could record the deed and deed of trust. Each of the properties involved in the six closings was encumbered by a pre-existing deed of trust from the Debtor and in each case Ms. Swittenberg retained a sufficient amount of funds at the closing to payoff the indebtedness secured by the pre-existing deed of trust. In each instance, Ms. Swittenberg, in fact, did pay off the indebtedness secured by the pre-existing deed of trust. However, Ms. Swittenberg failed to record either the deeds from the Debtor or the deeds of trust from the Purchasers to their Lender and none of the deeds or the deeds

of trust had been recorded when the Debtor filed its Chapter 7 petition on January 24, 2004.

These adversary proceedings were filed on November 4, 2005. The plaintiffs allege a controversy with the Trustee regarding whether the bankruptcy estate has any beneficial interest in the properties and seek declaratory relief that would establish the Purchasers as the owners of the properties in question and establish a first lien in favor of the Lenders securing the indebtedness due under the promissory notes that were executed by the Purchasers.  The Trustee denies that the plaintiffs are entitled to the relief sought in these proceedings and has asserted a counterclaim against the plaintiffs and a cross-claim against the Purchasers seeking an adjudication that as bankruptcy trustee, he holds title to the properties in question free and clear of all unrecorded interests, including any claims or interests of the plaintiffs or the Purchasers.  The plaintiffs and the Trustee both assert that there are no material issues of fact and seek summary judgment in their favor.

STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of  law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party moving for

- 4 -

summary judgment has the initial burden of proving that there is no genuine issue as to any material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970).  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.  Matsushita Elect. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts").  The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 252 (1986).  In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.  Having applied this standard in these proceedings, the court is satisfied that there are no material issues of act and that summary judgement as hereinafter provided is appropriate.

ANALYSIS OF CLAIMS

1.  Plaintiffs' Section 365 Claim

Plaintiffs' first claim is based upon section 365 of the Bankruptcy Code and relies upon the contention that the purchase contracts between the Debtor and the Purchasers were executory contracts when the Debtor's Chapter 7 petition was filed.  The relief sought in this claim is a declaratory judgment that: (a) the purchase contracts were executory on the petition date, (b) the purchase contracts be deemed rejected by the Trustee under section 365(d)(1) because they were not assumed by the Trustee; (c) sections 365(i) and (j) are applicable to the Purchasers; and (d) pursuant to section 365(i), the Purchasers be ordered to decide within a reasonable time to either remain in possession of the residences or treat the purchase contracts as terminated.

In order to prevail on this claim, the plaintiffs must establish that the purchase contracts were executory contracts on the petition date.  Plaintiffs acknowledge that the applicable criteria for determining whether a contract is executory is stated in Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1045 (4th Cir. 1985)(quoting Gloria Mfg Corp. v. Int'l Ladies Garment Workers Union, 734 F.2d 1020, 1022 (4th Cir. 1954)): "[A] contract is executory if the 'obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a

- 6 -

material breach excusing the performance of the other.'" Because
the purchase contracts define "closing" as the "date and time of
recording of the deed" from the seller to the buyer, the plaintiffs
argue that closing had not occurred on the petition date because
the deeds from the Debtor had not been recorded and that both the
Debtor and the Purchasers had remaining material obligations to
perform prior to closing.   This argument is contrary to the
undisputed facts and is not accepted.

It is clear from the record that the Debtor and the
Purchasers, the actual parties to the purchase contracts, went to
what they understood would be a closing and while assembled did
everything they thought was required in order to have a closing and
consummate their transaction.   In short, the Debtor and the
Purchasers intended to have a closing and went away believing they
had done so.  Presumably, based upon the contractual definition of
"closing", the parties could have delayed the consummation of their
transaction until the deeds from the Debtor had been recorded by
Ms. Swittenberg.  However, that is not what occurred.  The record
is undisputed that without receiving confirmation that the deeds
had been recorded, the parties chose to consummate and conclude
their transactions.   It is well established that parties to a
contract may, by their conduct, modify their agreement or waive
conditions contained in the contract.   See Mulberry-Fairplains
Water Ass'n v. Town of North Wilkesboro, 412 S.E.2d 910, 916 (N.C.

Ct. App. 1992); Son-Shine Grading, Inc. v. ADC Constr. Co., 315 S.E.2d 346, 349 (N.C. Ct. App. 1984).   Each of the Purchasers previously had obtained a loan with which to pay the bulk of the purchase price of the residence they were purchasing.   In each case, the Purchaser approved and authorized the disbursal of the loan proceeds required in order to pay the purchase price of the property.   This included signing the promissory note and deed of trust evidencing the loan and delivering those documents to the closing attorney.   In each case, the Purchasers approved and authorized the payment of the purchase price and their share of the closing cost.   After delivering the deeds, the Debtor delivered possession of the residences to the Purchasers and delivery was accepted by the Purchasers who promptly moved into the residences and began to make the payments on their purchase loans and to exercise all other indicia of ownership regarding the Properties. This course of conduct by the parties evidences that modification or waiver occurred with respect to the contractual definition of "closing".   Consequently, when the Debtor's bankruptcy petition was filed almost a year later, the purchase contracts, having been fully consummated by the parties, were in no sense executory since the parties had proceeded in a manner in which neither party had any further obligations regarding the purchase of the properties.

Even without such a modification regarding the contractual definition, the purchase contracts were not executory on the

- 8 -

petition date.  This is so because, based upon the performance provided by the Purchasers at what they thought was a closing, the Purchasers had no material obligations that were unperformed on the petition date.  The plaintiffs assert that on the petition date, further performance by the Purchasers was required involving the payment of additional sums on the purchase prices of the Properties, providing a first lien to their Lenders, proration of taxes, execution of additional documents in connection with the closing and transfer of title, and acceptance of the property at the closing.  The undisputed facts show otherwise.

Although there is some indication that the amount paid by some of the Purchasers may have been less than the figure in the purchase contract, it is undisputed that the Debtor agreed to the amount that was paid and unconditionally delivered the deed to the property as well as possession of the property to the Purchaser. To the extent that there was any variance between the money exchanged at the closing and the figures in the purchase contracts, the record thus reflects that the parties modified their agreement to make the purchase price the amount of the actual payments at the closings.

Any obligations on the part of the Purchasers regarding a loan commitment obviously were satisfied since in each case the required loan was in place, was funded by the Lender and provided funds that were actually paid to the Debtor.  Aside from the Purchasers having

fully performed all that was required of them in order to provide the Lender a first lien, the fact that the Lender nonetheless did not receive a first lien had no impact on the Debtor and left no further obligations to the Debtor.  Once the Debtor was paid the agreed upon purchase price (as occurred in each case), the Lender's lack of a lien was not a material breach of the purchase contract between the Purchaser and the Debtor and certainly would not excuse the Debtor from the obligation to deliver a deed and possession of the property to the Purchaser.

Proration of the ad valorem taxes is beneficial to the buyer since it results in the seller paying its share of the taxes for the portion of the year when the property was owned by the seller. Some of the Purchasers apparently were willing to consummate their purchases without requiring a proration of the taxes.  A failure by the Purchasers to insist that the Debtor pay its share of the 2003 ad valorem tax meant that the Debtor paid less.  This does not involve an obligation on the part of the Purchasers and could hardly be claimed by the Debtor as constituting a material breach of the contract that would excuse performance by the Debtor.

Likewise, the evidence does not support the assertion that there was a lack of performance by the Purchasers regarding the execution of documents or regarding the acceptance of the properties that could be construed as a breach of the purchase contract that would excuse performance on the part of the Debtor.

- 10 -

To the contrary, the evidence shows that the Purchasers executed all of the documents required of them at the closing and promptly and unconditionally accepted possession of the Properties at that time. In fact, the Purchasers even signed a correction agreement and limited power of attorney that granted the Lender a power of attorney to correct mistakes or clerical errors in any of the loan documents.

Viewed in its totality, the record before the court reflects that on the petition date, the Purchasers had no unperformed obligations under the terms of the purchase contracts which, if not performed, would constitute a material breach that would excuse any performance still owed by the Debtor. Under the rule adopted in Lubrizol, both parties to the contract must have unperformed, material obligations in order for a contract to be treated as executory. 756 F.2d at 1045. If either party to a contract has substantially performed and has no material obligations that are unperformed, the contract cannot be regarded as executory for purposes of section 365. Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 146 (4th Cir. 1995). See also In re S.A. Holding Co., LLC, 357 B.R. 51, 59 (Bankr. D.N.J. 2006); Kucin v. Devan, 251 B.R. 269, 272 (D. Md. 2000); Samson v. Prokopf (In re Smith), 185 B.R. 285, 294 (Bankr. S.D. Ill. 1995). Because the undisputed facts reflect that the Purchasers no longer had any material obligations that were unperformed on the petition date, it

follows that the purchase contracts were not executory on the petition date. This is true whether or not the Debtor had any material obligations that were unperformed.

The record also fails to support plaintiffs' argument that the Debtor's obligations under the purchase contracts were so far unperformed that failure of the Debtor to complete performance would constitute a material breach of the purchase contracts. Plaintiff's argument is primarily based upon the fact that on the petition date the prior deeds of trust that the Debtor had placed on the properties had not been cancelled. The requirement under the purchase contract is that "all deeds of trust, liens and other charges against the Property, not assumed by Buyer, must be paid and satisfied by the Seller prior to or at Closing such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing." It is undisputed that the amounts required to payoff the indebtedness secured by the prior deeds of trust were withheld from the sale proceeds that otherwise would have gone to the Debtor and the retained proceeds were utilized by the closing attorney to pay off the prior deeds of trust as required under the purchase contracts. The payment of these obligations meant that record cancellation was available and could have been obtained at any time by the Lenders or the Purchasers. Debtor's material obligations under the purchase contracts thus were performed, which means that

- 12 -

neither party had material obligations that were unperformed.

2. Plaintiffs' Constructive Trust Claim

In their second claim, the plaintiffs seek a declaratory judgment that: (a) a constructive trust was created in favor of the Purchasers as of dates prior to the petition date; (b) that on the petition date, only the bare legal title to the properties came into the Debtor's estate; and (c) that the Trustee be ordered to transfer the legal title to the properties to the Purchasers.

Plaintiffs base their claim upon state law regarding the imposition of constructive trusts and section 541(d) of the Bankruptcy Code.[1]  Plaintiffs argue that under applicable North Carolina law, the Purchasers are entitled to have a constructive trust imposed with respect to the Properties and that under North Carolina law such constructive trusts relate back to the conduct giving rise to such constructive trusts which, in each case, was prior to the petition date.  As a result of the constructive trust, plaintiffs maintain that on the petition date the Purchasers held equitable title, the Debtor held only bare legal title and section 541(d) therefore operates to exclude the properties from the bankruptcy estate and place the properties beyond the reach of the

---

[1]Section 541(d) provides that property in which the debtor holds, as of the commencement of a case, only legal title and not an equitable interest, "becomes property of the estate under subsection (a)(1) and (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

- 13 -

Trustee's powers under section 544(a)(3).

While not conceding that the Purchasers are entitled to a constructive trust, the Trustee argues that even if a constructive trust were imposed, the Trustee's rights under section 544(a)(3) are not subordinate to a constructive trust and that as a bona fide purchaser for value under section 544(a)(3), he is entitled to prevail over any rights of the Purchasers under a constructive trust.

The issue thus presented is whether section 541(d) trumps the Trustee's rights and powers under section 544(a)(3).  As noted by both parties, there is a split of authority regarding the issue. The decisions cited by the parties to support their respective positions unfortunately do not include a dispositive decision from the Court of Appeals for the Fourth Circuit and none apparently exists at this time.  Having carefully reviewed the authorities cited by both sides, including this court's earlier decisions,[2]

---

[2]Decisions of this court such as In re Hearne, No. 02-81181, 2003 WL 479113 (Bankr. M.D.N.C. Feb. 21, 2003) and In re Surplus Furniture Liquidators of High Point, Inc., 199 B.R. 136 (Bankr. M.D.N.C. 1995), involving personal property and sections 544(a)(1) and (2), are distinguishable since section 544(a)(1) and (2) do not grant the trustee the status of a bona fide purchaser of real property.  While In re Chriscoe, No. 03-12584, 2003 WL 23211566 (Bankr. M.D.N.C. Oct. 31, 2003), involved real property, the real property was subject to a judgment granting a constructive trust that was recorded prior to the filing of the bankruptcy petition. While not adequately explained in the opinion, the recorded judgment enabled the judgment creditor to prevail over the trustee, not because section 541(d) trumped the trustee's rights under section 544(a)(3), but because the recorded judgment lien had priority over the trustee as a BFP.

- 14 -

this court agrees with the reasoning and conclusion of the court in Mayer v. United States (In re Reasonover), 236 B.R. 219 (Bankr. E.D. Va. 1999), that section 541(d) does not trump the trustee's rights and powers under section 544(a)(3).

As pointed out in Reasonover, most of the decisions reaching a contrary result do not discuss or take into account the 1984 amendments to section 541(d). Id. at 227. Prior to those amendments, section 541(d) referred to property that became property of the estate under "subsection (a)." The 1984 amendments significantly modified the language of section 541(d) by deleting "subsection (a)" and replacing it with "subsection (a)(1) or (2)." This court agrees with the conclusion that "[b]y excluding from the operation of § 541(d) those portions of § 541(a) other than subsections (a)(1) and (a)(2), Congress clearly signaled its intention that the trustee's avoidance powers would trump claims based solely on the debtor's lack of equitable title." Id. 227-28.

The decision in Reasonover also supports the Trustee's argument that under section 544(a)(3) no transfer is required in order for a bankruptcy trustee to have the rights and powers of a bona fide purchaser of real property. As pointed out in Reasonover, the text of section 544(a)(3) not only does not limit the trustee's avoidance powers to transfers "by" the debtor, it is not even limited to "transfers." Id. at 228. In accord Mullins v. Burtch (In re Paul J. Paradise & Assocs., Inc.), 249 B.R. 360, 369

- 15 -

(D. Del. 2000).  What section 544(a)(3) says is that the trustee has "the <u>rights</u> <u>and</u> <u>powers</u> <u>of</u>, or may avoid any transfer of property of the debtor . . . that is avoidable by . . . a bona fide purchaser of real property . . ." (emphasis added).  The fact that this preamble is phrased in the disjunctive, is a strong indication that the trustee may exercise any "rights and powers" of a bona fide purchaser even in the absence of a transfer.  "In other words, the trustee occupies the position of a bona fide purchaser and takes real property free and clear of any unperfected liens or interests."  <u>Reasonover</u>, 236 B.R. at 228.  This means that in these proceedings, if a bona fide purchaser of the Properties from the Debtor would have acquired a superior right and title as against the Purchasers or entities claiming through the Purchasers, then so does the Trustee.

While a bankruptcy trustee's rights and powers as a bona fide purchaser of real property are created or conferred by federal bankruptcy law, the extent of the trustee's rights as a bona fide purchaser are measured by applicable state law.  <u>E.g.</u>, <u>Crestar Bank</u> <u>v. Neal (In re Kitchin Equip. Co. of Va.)</u>, 960 F.2d 1242, 1245 (4th Cir. 1992)("While federal law confers on the trustee the power to avoid some transfers and obligations of the debtor, state law controls the exercise of the power."); <u>Havee v. Belk</u>, 775 F.2d 1209, 1218 (4th Cir. 1985)("[W]hile it is the federal law which provides the trustee with his 'strong-arm' power, his exercise of

- 16 -

such power and its extent are governed entirely by the applicable state law.").

The Trustee argues that under North Carolina law, even if the Purchasers were granted a constructive trust, his rights as a bona fide purchaser of real property are superior to the rights of the Purchasers as the beneficiaries of the constructive trust.  The Trustee's argument is fully supported by North Carolina law under which the interests of a bona fide purchaser of real property without notice of the trust are superior to the rights of a beneficiary of an unrecorded equitable trust.  See In re Creech, 350 B.R. 24, 29 (Bankr. M.D.N.C. 2006); Bank of Vance v. Crowder, 139 S.E. 601, 602-03 (N.C. 1927)("Equity makes use of the machinery of a trust for the purpose of affording redress in cases of fraud, and will follow the property obtained by a fraud in order to remedy the wrong, and only stops the pursuit when the means of ascertainment fails or the rights of bona fide purchasers for value, without notice of the fraud or trust, have intervened."); Corp. Comm'n of N.C. v. Merchants' Bank and Trust Co., 138 S.E. 22, 24 (N.C. 1927)("As a general rule, if property is converted and the trust fund can be traced and identified, the cestui que trust may resort to a court of equity to compel its transfer to himself, and his right will not be affected by any change in the trust property wrought by the trustee without his consent unless it has been transferred to a bona fide purchaser, or assignee, for value

- 17 -

without notice."); <u>Spence v. Foster Pottery Co.</u>, 117 S.E. 32, 33 (N.C. 1923)(stating that "a bona fide purchaser for value without notice (but not a creditor) is protected against the claim of one in whose favor the trust is sought to be established"). Thus, as a matter of law, the rights of the Trustee, as a hypothetical bona fide purchaser of the Properties, are superior to any rights that the plaintiffs or the Purchasers could acquire under a constructive trust. It follows that the Trustee is entitled to summary judgment with respect to the plaintiffs' constructive trust claims.

    3.   Plaintiffs' Equitable Subrogation Claim

    In their third claim, the plaintiffs seek a declaratory judgment that: (a) the plaintiff Lenders are equitably subrogated to the first lien position held by the previous lenders under the deeds of trust from the Debtor and (b) that the plaintiff Lenders hold a first lien on the properties.

    Unlike Plaintiffs' constructive trust claims, Plaintiffs' equitable subrogation claims are not necessarily foreclosed as a result of the Trustee's status as a bona fide purchaser under section 544(a)(1). In the present proceedings, the Lenders seek to be subrogated to the rights of prior lenders who held recorded deeds of trust on the Properties. In order to determine how a subrogee to a lien or other interest in real property fares against a bankruptcy trustee, it is necessary to consider the recording acts of the state in which the real property is located. The

- 18 -

pertinent North Carolina recordation statute, N.C.G.S. § 47-18, is what is commonly referred to as a "pure race" statute "meaning that the one who wins the race to the Register of Deeds' office will have priority." See I James A. Webster, Jr., WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 17-2 (4th ed. 1994). Under such a statute, the party who records first has superior priority and even a bona purchaser for value takes the property subject to any prior recorded encumbrances. Id. See also Simmons v. Quick-Stop Food Mart, Inc., 296 S.E.2d 275, 281 (N.C. 1982). The rights of a bankruptcy trustee under section 544 arise as of the time the bankruptcy petition was filed. This means that the relative rights of an equitable subrogee and the trustee depend on whether, at the time the petition is filed, there was a pre-petition filing on record upon which the equitable subrogee may rely. If so, then the equitable subrogee may defeat the trustee since the trustee would take the property subject to recorded liens. See Reasonover, 236 B.R. at 232-33.

Each of the Properties involved in these proceedings was encumbered by a deed of trust from the Debtor when the Purchasers contracted to purchase the Properties. After the closings, the obligations secured by these deeds of trust were paid off. However, only two of the deeds of trust were cancelled of record prior to the Debtor filing for bankruptcy relief. Since those deeds of trust were cancelled of record, they no longer constituted

- 19 -

encumbrances for purposes of the public record. However, as to the remaining Properties (the Reeves, Hairston, Koduah/Boateng and Coley/Bell Properties), there was a recorded deed of trust of record that had not been cancelled when the bankruptcy case was filed and when the Trustee acquired his status as a bona fide purchaser of the Properties.[3] As a result, if the Lenders are entitled to the remedy of equitable subrogation, they may thereby succeed to the rights under the deeds of trust and, to the extent of their payments to the prior lenders, have priority over the Trustee. The question that remains is whether the Lenders may invoke equitable subrogation.

In North Carolina, equitable subrogation is a well-established remedy. It is a creature of equity that includes instances in which one party has paid a debt for which another party was primarily liable and which in equity and good conscience should have been discharged by the latter. Wallace v. Benner, 156 S.E. 795, 798-99 (N.C. 1931). A party who is permitted to invoke the remedy of equitable subrogation succeeds to all of the rights, remedies and security which the party who was paid had against the person whose debt was paid. Trs. of the Garden of Prayer Church v.

_____

[3]The fact that the indebtedness secured by the deeds of trust was satisfied has no effect upon whether equitable subrogation may be obtained because equitable subrogation treats the satisfied obligation "as still subsisting for the benefit of [the provider of the funds that satisfied the obligation], who is thus substituted to the rights, remedies, and securities of another." Peek v. Wachovia Bank & Trust Co., 86 S.E.2d 745, 755 (N.C. 1955).

- 20 -

<u>Geraldco Builders, Inc.</u>, 336 S.E.2d 694, 698 (N.C. App. 1985).
Equitable subrogation, however, "is not an absolute right, but one
which depends on the equities and attending facts and circumstances
of each case." <u>First Union Nat. Bank v. Lindley Laboratories,
Inc.</u>, 510 S.E.2d 187, 188 (N.C. App. 1999).

One situation in which equitable subrogation may be applicable
is described as follows in <u>Wallace</u>, 156 S.E. at 798-99:

> But the rule is settled that, where money is
> expressly advanced in order to extinguish a
> prior incumbrance, and is used for this
> purpose, with the just expectation on the part
> of the lender of obtaining a valid security,
> or where its payment is secured by a mortgage
> which for any reason is adjudged to be
> defective, the lender or mortgagee may be
> subrogated to the rights of the prior
> encumbrancer whose claim he has satisfied,
> there being no intervening equity to prevent.
> It is of the essence of this doctrine that
> equity does not allow the incumbrance to
> become satisfied as to the advancer of the
> money for such purposes, but as to him keeps
> it alive, and as though it had been assigned
> to him as security for the money.

<u>Accord</u> <u>Peek v. Wachovia Bank & Trust Co.</u>, 86 S.E.2d 745, 755 (N.C.
App. 1955). Based upon the undisputed facts, the court is
satisfied that the Lenders fall within this application of
equitable subrogation.

In evaluating whether the Lenders should be permitted to
invoke equitable subrogation, an important circumstance to be
considered is the context in which the loans were made by the
Lenders and in which the proceeds of the loans were disbursed.

- 21 -

Each of these proceedings involves a situation in which the Purchasers were purchasing new homes from the Debtor. In each instance, the new home was subject to a deed of trust securing a construction loan that had been incurred by the Debtor in constructing the new home. The purchase contracts between the Debtor and the Purchasers specifically provided that all deeds of trust against the property were to be paid by the Debtor prior to or at the closing and the HUD closing statements reflected that proceeds supplied by the Lenders were to be used to pay off the existing deeds of trust on the Properties. The loans that were approved by the Lenders were conditioned upon the Lenders receiving a first priority deed of trust on the Properties to secure the new loan. In fact, the closing attorney was authorized to disburse the loans proceeds only if the Lenders received a first priority deed of trust. This meant that the Purchasers could purchase their new homes only if the construction loans were paid off and title to the new homes were clear of the construction deeds of trust. It is undisputed that all of the parties understood and intended that a substantial portion of the proceeds from the loans that were funded by the Lenders therefore would be paid directly to the construction lenders in order to payoff the debts secured by the construction deeds of trust. In that regard, the record includes closing statements that reflect the agreement of the Purchasers and the Debtor that a portion of the loan proceeds held by Ms. Swittenberg,

- 22 -

the closing attorney, were to be disbursed directly to the construction lenders who held deeds of trust on the Properties. This payoff of the existing deeds of trust thus was an essential component of the arrangement required to enable the Purchasers to purchase the Properties involved in these proceedings, and it is reasonable to conclude from the undisputed facts that one purpose of the new loans was to payoff the existing loans.

It also is undisputed that the loan proceeds supplied by the Lenders were used by Ms. Swittenberg to make such payments to the construction lenders following the closings.  This occurred in each instance when loan proceeds that had been wire transferred into the trust account of Ms. Swittenberg by the Lenders were used by her to make the payments to the construction lenders.  Payment of these pre-existing obligations was necessary to protect the Lenders' interests as secured lenders who were to have a first priority deed of trust on the Properties.

The Trustee argues that equitable subrogation is not available in these proceedings and strongly relies on some of the language contained in the decision in Peek in support of his position.  For a number of reasons, the court believes that the Trustee's reliance on Peek is misplaced.

There are critical, distinguishing differences between the facts involved in Peek and the facts now before the court.  In the Peek case, a customer of Wachovia borrowed funds from Wachovia and

turned the borrowed funds over to Mr. Peek.  Mr. Peek then used the
loan proceeds to cover a check issued by Mr. Peek that paid off a
lien on a vehicle.   The issue was whether this evidence was
sufficient to support a claim by Wachovia that it should be
subrogated to the lien that was paid off by Mr. Peek.  There was no
evidence of any discussion or understanding between Wachovia and
its customer regarding the manner in which the funds would be used
when received by the customer.   The court concluded that merely
showing that the loan proceeds ended up paying off a lien was not
sufficient to raise the issue of subrogation.   In reaching this
conclusion, the court stated that the "[b]ank, having failed to
show that its loan moneys were advanced with the intent and for the
purpose of extinguishing the prior encumbrance, has failed to bring
itself within the principles of the doctrine of subrogation."
Peek, 86 S.E.2d at 756.  As the court noted, Peek was merely a case
of "ordinary borrowing and lending" that did not involve any
expectation or commitment about how the loan proceeds would be
used.  Id.  The court's disallowance of equitable subrogation under
those circumstances is no indication that equitable subrogation
should not be available under the very different facts presented in
these proceedings.

The Trustee argues that the decision in Peek precludes the
application of equitable subrogation in the proceedings now before
the court because, according to the Trustee, the purpose of the new

loans in these proceedings was to pay the purchase price of the
Properties and not to payoff the construction loans and deeds of
trust.   This argument is without merit.   The Trustee's assertion
regarding the purpose of the loans is contrary to the record.
While the ultimate goal to be accomplished by the new loans was to
enable the Purchasers to acquire new homes, the purpose of the
loans was to make all of the payments required in order for this
goal to be achieved, including the payoff of the construction loans
and deeds of trust.

The Trustee also argues that equitable subrogation is not
available in these proceedings because the borrowed funds were not
used to pay an obligation of the borrowers (i.e., the Purchasers),
but instead were used to pay obligations of the Debtor.   Neither
Peek nor the other North Carolina decisions involving equitable
subrogation support such a limitation.   Although in Peek the
obligation that was paid with the Wachovia loan proceeds was the
obligation of Peek and not that of Moffitt, the borrower, there is
no indication in the decision that this circumstance had any
bearing on whether equitable subrogation was available.   In fact,
the clear indication of the opinion is that had the funds been
loaned to Moffitt to payoff the Peek obligation and lien, then
subrogation would have been available.

Finally, it seems apparent from the opinion that the court in
Peek did not intend to limit equitable subrogation to a single fact

- 25 -

situation.  To the contrary, the court stated that "[f]or present purposes, it is not necessary to give a comprehensive classification of the various types of cases and situations to which the doctrine of subrogation may be applied."  86 S.E.2d at 755.

Unlike the facts in Peek, these proceedings do not involve transactions in which loan proceeds just happened to be used to pay off an existing loan.  Rather, in these proceedings, the disbursal of any of the proceeds of the new loans was expressly conditioned on the new Lenders receiving a first priority deed of trust on the Properties and the understanding and intent of the parties was that a portion of the loan proceeds would be used to pay off existing deeds of trust so that the new Lenders would have a first priority deed of trust.  The instruments necessary for this to occur were executed and delivered.  Then, at the request of the Debtor as evidenced in the closing statements, proceeds from the new loans were used to pay off the Debtor's construction loans and deeds of trust.  Despite such payoff, however, and contrary to the intent of the parties, the new deeds of trust were not recorded and the Lenders did not receive the first priority liens contemplated by the parties.  The net result is that the Lenders supplied loan proceeds that the parties understood and intended would be used to pay off obligations of the Debtor that were secured by deeds of trust on the Properties, the loan proceeds were so used, and this

- 26 -

payoff occurred with the express understanding that the Lenders would be secured by first priority deeds of trust on the Properties. Although not strictly a refinancing, this is precisely the type of situation that, under the broad equitable principles recognized in the North Carolina cases, the remedy of equitable subrogation may be invoked by the new lender in order to claim the rights formerly held by the old lender under the old lender's deed of trust.

The Trustee also seeks to block the claim for equitable subrogation by asserting that the plaintiffs are barred by the doctrine of laches. Laches is a defense to equitable relief which embodies the equitable maxim that one who sits on his or her rights and thereby prejudices another party, lacks "clean hands" and may not obtain equitable relief because "he who comes into equity must come with clean hands." Creech v. Melnik, 495 S.E.2d 907, 913 (N.C. 1998). The Trustee argues that the failure of the plaintiffs to act diligently regarding recordation of their deeds of trust bars them from seeking equitable relief. However, the unclean hands doctrine "is not one of absolutes that applies to every unconscionable act of a party." Ferguson v. Ferguson, 285 S.E.2d 288, 292 (N.C. App. 1982). One who relies upon laches as a defense must show "(1) lack of due diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101,

- 27 -

121-22 (2002).  The extent to which a "delay will constitute laches depends upon the facts and circumstances of each case."  Williams v. Blue Cross Blue Shield of N.C., 581 S.E.2d 415, 424 (N.C. 2003). Even if it is shown that a party delayed in the assertion of his or her rights, "the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it."  Id. at 424-25.  Laches will not afford a party relief "where the delay has not worked an injury or prejudice or disadvantage" to that party.  In re Miles' Estate, 138 S.E.2d 487, 492 (N.C. 1964).

The Trustee relies upon the delay of the Lenders in following up to make sure that proper recordation had occurred with respect to the deeds to the Purchasers and their deeds of trust.  This delay occurred during the 8 to 10 month period between the closings in March-May of 2003, and the commencement of the Debtor's bankruptcy case in January of 2004.  The record is devoid of any evidence that the Lenders made any inquiries or took any action to determine whether the deeds and deeds of trust had been recorded. Also, as pointed out by the Trustee, two of the Lenders received calls from their Purchasers (Smith and Hairston) indicating that their deeds had not been recorded.  Even if this delay and failure to followup was unreasonable and negligent as contended by the Trustee, the availability of laches as a defense depends upon whether such delay and neglect resulted in injury or prejudice to

the Trustee.   Here, the Trustee cannot show that the failure to record the deeds and deeds of trust has worked a disadvantage against him.   Nothing in the record indicates that the Debtor or the Trustee took any action or failed to take any action during or as a result of the delay that was injurious or prejudicial.   To the contrary, the plaintiffs argue that the Trustee actually benefitted from the delay since it is the delay that enabled the Trustee to acquire his bona fide purchaser status.   In any event, there is no indication in the record of prejudice or injury to the Trustee as a result of the delay of the Lenders.   Absent such a showing, the defense of laches is not available to the Trustee.

CONCLUSION

In accordance with the foregoing memorandum opinion a separate order shall be entered contemporaneously with the filing of the memorandum opinion providing as follows:

(1) Granting summary judgment in favor of the Trustee with respect to the claim based upon section 365 and dismissing such claim with prejudice;

(2) Granting summary judgment in favor of the Trustee with respect to the claim for constructive trust and dismissing such claim with prejudice;

(3) Granting summary judgment in favor of the Trustee with respect to claim for equitable subrogation as to the Smith and Daniels properties and dismissing those portions of the equitable

subrogation claim with prejudice; and

(4) Granting summary judgment in favor of the Lenders with respect to their claims for equitable subrogation as to the Reeves, Koduah/Boateng, Hairston and Coley/Bell properties, with such subrogation being limited to the amounts that were paid to the construction lenders from the loan proceeds provided by the Lenders.

This 17th day of August, 2007.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

- 30 -

## PARTIES IN INTEREST

William P. Miller, Esq.
Christopher C. Finan, Esq.
P. O. Box 1550
High Point, NC 27261

Donald K. Speckhard, Esq.
221 Commerce Place, Suite D
Greensboro, NC 27401

Douglas Q. Wickham, Esq.
P.O. Box 527
Raleigh, NC 27602

Van Reeves
1209 Franklin Street
Goldsboro, NC 27530

John H. Small, Esq.
P.O. Box 26000
Greensboro, NC 27420

Katherine J. Clayton, Esq.
P.O. Box 1800
Raleigh, NC 27602

Mark A. Stafford, Esq.
380 Knollwood Court, Suite 530
Winston Salem, NC 27103

Kenneth M. Johnson, Esq.
P.O. Box 21247
Greensboro, NC 27420

Michael D. West, Bankruptcy Administrator